## Wilson v. Emery.

*Automobiles — Parking regulations — Parking — False imprisonment — Malice.*

1. Any unlawful detention of a person is false imprisonment and imports malice. The motive of the one making the arrest is immaterial, except as affecting the amount of the damages.

2. The head of the police department in a municipality may establish a parking regulation to prevent congestion of travel at a given location, and one violating its regulation may be arrested by an officer witnessing the act.

3. A regulation prohibiting parking of an automobile is not violated by one stopping his car temporarily to transact business in an abutting building, but such stopping must not continue to the extent of an unreasonable obstruction to other users of the highway.

4. Parking is an indefinite term, and whether one parked his automobile or stopped it temporarily is generally for the jury.

5. "Parking," in connection with the stopping of automobiles in a highway, is used in a tropical sense, and means to assemble together. A prohibition against parking is to prevent the assembly of cars for an unreasonable time, and the stopping of the first car for such time is the beginning of parking and a violation of the regulation.

Motions by defendant for judgment *non obstante veredicto* and for a new trial. C. P. Delaware Co., Dec. T., 1920, No. 305.

*Fred Taylor Pusey*, for motions; *W. R. Fronefield*, contra.

BROOMALL, J., Nov. 26, 1921.—This is an action for false arrest and imprisonment. Any unlawful detention of a person is false imprisonment. The legal wrong of false imprisonment imports malice. The motive of the defendant is immaterial, except as affecting the amount of damages. On Oct. 14, 1920, the defendant arrested the plaintiff for parking his automobile on a public street. The plaintiff, a resident of the Borough of Lansdowne, came with his automobile, containing his wife and children, to a point on the south side of Baltimore Avenue within fifty feet east of Lansdowne Avenue, in the Borough of Lansdowne, and stopped opposite a drug store. His wife was at the wheel. He got out of his car and started to the drug store. The engine of his car continued to run. The defendant, a policeman of the borough, notified him that no parking was allowed at that place, and directed his attention to a sign to that effect. The plaintiff was going into the drug store to pay a bill. He replied to the officer that he was not parking, but merely stopping. The officer ordered him to move his car, which the plaintiff refused to do. Then ensued an argument, in which the plaintiff maintained he was within his rights in stopping his car for the brief purpose of a business visit to the store, and the defendant maintained that the plaintiff was violating a police regulation. The defendant then arrested the plaintiff and took him to the borough lockup, where he was confined twenty minutes and then released. The altercation between them over their respective rights attracted bystanders and was the occasion of some disorder. Whether the disorder was pro-

duced by the plaintiff or the defendant depends on which of them was in the wrong. But the arrest was not for disorderly conduct. It was for a refusal to move the car.

There was no borough regulation establishing the place in question as a no parking zone.

Although there was no borough regulation on the subject, yet we were of opinion on the trial that if the head of the police department, as a conservator of the peace, had established a regulation for the exigency of congested travel at this point to preserve the peace, and all as a temporary requirement to meet such exigency, and the plaintiff was violating that requirement, it would justify the arrest. We assimilated it to a case where there is a fire and the policemen, as a peace measure, string a rope cordon to keep the public away, and one invades this barrier, he may lawfully be arrested and restrained as committing a breach of the peace, provided the one who makes the arrest sees the act. Strickly speaking, this is not merely probable cause. It is a defence. Probable cause is no defence to false imprisonment. We called it probable cause on the trial, but this makes no difference, because we instructed the jury that if they found certain facts, which we called probable cause, existed, the verdict should be for the defendant. The facts to be found were:

1. Did the police officers of the borough establish this space in the street as a non-parking space and as a reasonable regulation for preserving good order and peace?

2. Did they put up a sign to that effect?

3. Did the plaintiff park his car in this space?

The jury were instructed that if they found all of these questions in favor of the defendant, their verdict should be for the defendant, but if they found any of these questions against the defendant, the verdict should be for the plaintiff.

The verdict was for the plaintiff, and, inasmuch as the plaintiff claimed only nominal damages, they assessed the damages at $1.

The jury, no doubt, found the first two questions in favor of the defendant, because they were not controverted. The third was the pivotal question in the case. Was the plaintiff parking his car or was he merely stopping. It was no doubt lawful for the plaintiff to stop his car a reasonable time to transact business with a neighboring store. To hold otherwise would derogate from the right of the storekeeper to have the public on wheels have convenient access to his store, and would derogate as well from the right of the public to exercise such right. But the exercise of such right must not continue to the extent of occasioning an unreasonable obstruction to other users of the highway. Parking, as applied in this connection, is an indefinite term. There is no certain time when the person ceases to be a legitimate stopper and begins the operation of parking. The word "parking" is here used in a tropical sense. Literally, to park is to assemble things together, and in this sense one automobile can no more park than one bird can flock. The idea of assembling inheres in the term. Still, considering the spirit and reason of the law where the term is used, the prohibition against parking automobiles is to conduce to the use of the highway by preventing the assembly of cars for an unreasonable time, and in this sense the stopping of the first car for an unreasonable time is the beginning of parking, and, therefore, inimical to the law. Further than that, even where there is no express prohibiting regulation, any use of the highway not for the purposes of travel is unlawful, qualified, of course, by such uses as have by custom received public sanction, as the occupation of trees, hitching-posts, stepping-stones, awnings, door-

1 D. & C.

steps, etc., to which may be added stopping a vehicle a reasonable time to transact business with a merchant.

We made an ineffectual effort on the trial to define the word parking, and not being satisfied with it, and seeing that it involved the question of reasonable time, we left it to the superior knowledge of the jury.

We see no reason to interfere with their conclusion.

Defendant's motions for judgment *n. o. v.* and for a new trial are, therefore, refused.                                     From A. B. Geary, Chester, Pa.